**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge Robert E. Blackburn**

Civil Action No. 13-cv-03013-REB

KEITH BROOKS,

        Applicant,

v.

RICK RAEMISCH, Exec Director Colorado Dept of Corrections,
BOBBY BONNER, Warden, Limon Correctional Facility, and
JOHN SUTHERS, Attorney General, State of Colorado,

        Respondents.

---

## ORDER ON APPLICATION FOR A WRIT OF HABEAS CORPUS

---

**Blackburn, Judge**

        This matter is before me on the [Amended] Application for a Writ of Habeas

Corpus Pursuant to 28 U.S.C. § 2254 ("Amended Application") [# 17-1],[1] filed March 10,

2014, by Applicant Keith Brooks, through counsel.  Respondents answered the

Amended Application [# 32], and Applicant filed a traverse [# 39].  After reviewing the

pertinent portions of the record in this case including the Amended Application, the Brief

in Support [#11], the Answer, the Traverse, and the state court record, I conclude that

the Application should be denied.

---

[1] "[# 1]" is an example of the convention I use to identify the docket number assigned to a specific
paper by the court's electronic case filing and management system (CM/ECF). I use this convention
throughout this order.

## I.  BACKGROUND

In 2007, Applicant was convicted of attempted first degree murder after deliberation of a peace officer, attempted second degree murder, first degree assault of a peace officer, felony menacing, and two counts of first degree burglary, in El Paso County District Court Case No. 05CR5346.[2]   He was adjudicated a habitual offender and sentenced to the Colorado Department of Corrections for a term of 144 years.

The Colorado Court of Appeals summarized the relevant facts on direct review of Applicant's convictions, in *People v. Keith C. Brooks* (*Brooks I*), No. 07CA0997 (Colo. App. Nov. 26, 2008):

> [Law enforcement officers approached a garage based on a reported burglary in progress].
>
> Upon entering, they observed a male kneeling down, who immediately ran into the residence. Deputy Gaenzle ran to the door leading into the residence, tried to kick it open, and continued to announce the deputies' presence. Deputy Gaenzle repeatedly attempted to kick the door open, but each time the door would open approximately six inches and then would be slammed closed. He observed a shoulder or elbow pushing against the door to keep it closed. After kicking the door three times, a gunshot was fired through the closed door, went by Deputy Gaenzle's face, and continued through the garage. The deputies exited the garage for their safety.
>
> After exiting the garage, the deputies saw a man run across the backyard and climb over a wooden fence. Both deputies testified that this individual had a firearm in his hand. Deputy Gaenzle stated that he fired a shot at the man when the man raised his gun up as he climbed the fence. The man fell over the other side of the fence and fled the scene.
>
> Three days later, [Applicant] was arrested and transported to the hospital to treat a gunshot wound to his buttocks. In a police interview at the hospital, [Applicant] stated that he had been shot while attempting to escape over a fence after burglarizing a residence with his cohort, Nicholas Acevedo. [Applicant] initially indicated that both he and Acevedo

---

[2]State Court R., Court File, Jury Verdicts, at 214-219.

were armed during the burglary, but then stated that only Acevedo had a gun.

[# 2-2, at 5-6].  Acevedo was shot and killed following a high speed chase a few weeks after the burglary.  [*Id.* at 7].

On direct appeal, the Colorado Court of Appeals affirmed Applicant's convictions, except for one of the first degree burglary convictions, which the state appellate court vacated because the two convictions and sentences for first degree burglary would constitute multiple punishments for the same criminal conduct. [*Id.* at 22-24, 28].  The Colorado Court of Appeals remanded the case for the trial court to issue a new mittimus to reflect only one first degree burglary conviction and concurrent sentences for attempted first degree murder and first degree assault. [*Id.* at 27-28].

Applicant was resentenced by the state district court on November 24, 2009 and did not appeal. [# 17-1, at 3].  Thereafter, he filed a motion for state post conviction relief, pursuant to Colo. Crim. P. Rule 35(c), which the state district court denied without a hearing.  The Colorado Court of Appeals affirmed the district court's order in *People v. Keith Clayton Brooks* (*Brooks II*), 10CA2272 (Colo. App. May 24, 2012) (unpublished). [# 2-8].  The Colorado Supreme Court denied certiorari review on January 28, 2013.  [# 2-10].

Mr. Brooks initiated this action on November 4, 2013.  He asserts the following claims in his Amended Application:

(1) Applicant was denied a fair trial, in violation of his Sixth and Fourteenth Amendment rights, when the court allowed the prosecution to admit evidence of other burglaries. [# 17-1, at 22-23].

(2) Applicant's Sixth Amendment right to receive the effective assistance of counsel was violated when his lawyer, who had an actual conflict of interest, failed to object to the confusing jury instructions on complicity or

3

request proper instructions.  Direct appeal counsel was also ineffective in failing to raise the issue of the inadequate complicity instructions. [*Id.* at 23-24].

Respondents concede that the Application is timely pursuant to the AEDPA one-year limitation period, 28 U.S.C. § 2244(d)(1). [# 12, at 3-5].  Respondents further concede that Applicant exhausted state remedies for his claims. [*Id.* at 6].  I address below the merits of Applicant's claims under the deferential AEDPA standard of review.

## II.  LEGAL STANDARDS

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The applicant bears the burden of proof under § 2254(d).  *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

A claim may be adjudicated on the merits in state court even in the absence of a statement of reasons by the state court for rejecting the claim.  *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 784-85 (2011).  In particular, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning."  *Id.* at 784.  Thus, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court

adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 784-85.  Even "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id.* at 784.  In other words, the Court "owe[s] deference to the state court's *result*, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999).  Therefore, the court "must uphold the state court's summary decision unless [the court's] independent review of the record and pertinent federal law persuades [the court] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* at 1178.  "[T]his 'independent review' should be distinguished from a full de novo review of the petitioner's claims." *Id.*

The *Richter* presumption is also applicable when a state-court opinion addresses some but not all of those claims. *Johnson v. Williams*, 133 S. Ct. 1088, 1094-98 (2013).  For purposes of § 2254(d), when a state court rules against a defendant in an opinion that rejects some of the defendant's claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. *Id.* at 1094-96.  Federal habeas courts should not assume that any unaddressed federal claim simply was overlooked because a state court does not uniformly discuss separately every claim referenced by a defendant. *Id.*

The court reviews claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1).  *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003).  The threshold question the court must answer under § 2254(d)(1) is whether the

applicant seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final.  *See Williams v. Taylor*, 529 U.S. 362, 390 (2000).  Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id*. at 412.  Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*.  Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).  If there is no clearly established federal law, that is the end of the court's inquiry pursuant to § 2254(d)(1).  *See id*. at 1018.

If a clearly established rule of federal law is implicated, the court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law.  *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405).  "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).

> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts.  *Id*. at

6

> 407-08.  Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

*House*, 527 F.3d at 1018.

The court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry.  *See Williams*, 529 U.S. at 409–10.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id.* at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671.  In addition,

> evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Richter*, 131 S.Ct. at 786 (internal quotation marks omitted).  "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also Richter*, 131 S.Ct. at 786 (stating that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 131 S.Ct. 786-87. *See also White v. Woodall*, 134 S. Ct. 1697 (2014) (citing and quoting *Richter*).

The court reviews claims asserting factual errors pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n. 4 (10th Cir. 2002). Section 2254(d)(2) allows the federal court to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court. Pursuant to § 2254(e)(1), the court must presume that the state court's factual determinations are correct and the petitioner bears the burden of rebutting the presumption by clear and convincing evidence. "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller–El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003)).

### III.  MERITS OF THE CLAIMS

**A.  Claim 1**

For his first claim, Applicant asserts that he was denied a fair trial, in violation of the Sixth and Fourteenth Amendments, when the trial court admitted evidence of "booking photographs" and other burglaries committed by Applicant. [# 17-1, at 23].

The Tenth Circuit recently summarized the case law governing § 2254 claims involving the admission of evidence that compromises the constitutional right to a fair trial:

> In *Payne v. Tennessee*, 501 U.S. 808, 825 (1991), the Supreme Court held that when a state court admits evidence that is "so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief." And in *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991), the Court made clear that this principle holds true regardless of whether the evidence at issue was properly admitted pursuant to state law.

*Lott v. Trammell*, 705 F.3d 1167, 1190-1191 (10th Cir. 2013) (parallel citations omitted).

*See also Lisenba v. California*, 314 U.S. 219 (1941) ("In order to declare a denial of [due process] we must find that the absence of [fundamental] fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial.")

"Inquiry into fundamental fairness requires examination of the entire proceedings, including the strength of the evidence against the petitioner . . . ." *Le v. Mullin*, 311 F.3d 1002, 1013 (10th Cir. 2002) (citing *Donnelly* v. *DeChristophoro*, 416 U.S. 637, 643 (1974)). In conducting this fundamental fairness examination, the federal habeas court does not "second guess a state court's application or interpretation of state law . . . unless such application or interpretation violates federal law." *Bowser v. Boggs*, 20 F.3d 1060, 1065 (10th Cir. 1994); *see also Boyd v. Ward*, 179 F.3d 904, 912 (10th Cir. 1999). A federal habeas court may consider defense counsel's actions, including a failure to object at trial. *Le*, 311 F.3d at 1013 (citing *Trice v. Ward*, 196 F.3d 1151, 1167 (10th Cir. 1999)).

A constitutional error at a state criminal trial does not entitled a federal habeas petitioner to relief unless the error "'had a substantial and injurious effect or influence in determining the jury's verdict.'" *Fry v. Pliler*, 551 U.S. 112, 116 (2007) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993)).

9

### 1. References to booking photograph

Applicant asserts that his due process rights were violated when the trial court admitted evidence of his "booking photograph."

During trial, a police detective testified that he identified Applicant as a suspect during the criminal investigation based on a "booking photograph."[3]  Defense counsel objected and requested a mistrial.[4]  The trial court concluded that the single reference to the word "booking" was not serious enough to warrant a mistrial because no attention was drawn to the word.[5]  The trial court offered to give a curative instruction, but defense counsel declined because the bell had "rung," and he did not want to draw any further attention to the testimony.[6]

Later, another detective was asked how a witness had identified the suspect, and the detective responded:  "[W]e had shown her the two booking photos that we had had of both of those individuals."[7]  Defense counsel again objected and requested a mistrial.[8]  The trial court denied the motion and offered a curative instruction, but defense counsel did not request that the instruction be given.[9]

---

[3]State Court R., 1/12/07 Trial Tr., at 200.

[4]*Id.*

[5]*Id.* at 201.

[6]*Id.* at 201, 204.

[7]*Id.*, 1/16/07 Trial Tr., at 56.

[8]*Id.*

[9]*Id.* at 56-57.

On direct appeal, Applicant argued that the trial court erred in denying his requests for a mistrial.  In *Brooks I*, the Colorado Court of Appeals rejected Applicant's claim on the following grounds:

> We conclude that the court's denials of [Applicant's] requests for mistrial were not manifestly arbitrary, unreasonable, or unfair, and, thus, that the court did not abuse its discretion when it did so as to this testimony. . . . [T]he references to the booking photographs were isolated, unelicited remarks with no mention of any particular instances of prior criminality. In addition, the trial court offered a curative instruction to remedy any prejudice, but [Applicant] did not avail himself of this remedy.

[ # 2-2, at 20].

The state appellate court's factual findings that the two references to "booking photographs" were isolated and did not contain any mention of a particular instance of prior criminality are presumed correct and are supported by the state court record. Applicant does not point to any clear and convincing evidence to the contrary.  Further, Applicant declined the trial court's offer to give a curative instruction.  *See Nichols v. Sullivan*, 867 F.2d 1250, 1254 (10th Cir. 1989) (concluding that isolated and unsolicited reference to petitioner's prior convictions did not prejudice petitioner's right to fair trial where the judge offered to give a cautionary instruction to the jury, but petitioner declined the offer); *see also United States v. Jones*, 468 F.3d 704, 709 (10th Cir. 2006) (concluding that counsel's failure to request a curative instruction weighed against a finding that defendant was prejudiced); *Donnelly*, 416 U.S. at 644 (recognizing that a curative instruction can mitigate the effect of potentially prejudicial occurrences at trial).

In addition, Applicant conceded during opening statements and closing

arguments that he participated in a (second degree) burglary with Acevedo.[10]  And, he

told a detective at the time of his arrest that he and Acevedo were partners.[11]

I find and conclude that the state appellate court's resolution of Applicant's due

process claim was consistent with *Payne* because the detectives' isolated references to

the Applicant's "booking photograph" was not so prejudicial that it rendered the trial

fundamentally unfair.  *See also Fry*, 551 U.S. at 116, 121-22.  Claim 1 will be dismissed.

### 2.  References to prior burglaries

Applicant also contends that his due process rights were violated when the trial

court admitted evidence of his other burglaries.

At trial, the following colloquy occurred between the prosecutor and an

investigator regarding the investigator's participation in the police interview of  Applicant:

Prosecutor: Did you talk at all about sort of why Nickolous Acevedo and
the [Applicant] were together that day?

Investigator: They were together for the purpose of committing burglaries.
. . . .

Prosecutor: Okay.  What specifically did he say about doing burglaries
together with Nickolous Acevedo?

Investigator: He described that again they had only known each other for
about a month; that they were doing – they had, he described it by using
the term, they had a few licks.  And that's a common term that I've heard
other people use in the past.  It's a street slang that they use to describe
committing a burglary or committing a robbery . . . .[12]

Applicant objected to the detective's testimony and requested a mistrial, arguing that the

prosecution had not disclosed any intent to introduce prior bad act evidence and that it

---

[10]State Court R., 1/9/07 Trial Tr., at 15; 1/19/07 Trial Tr., at 173.

[11]*Id.*, 1/12/07 Trial Tr., at 62, 79.

[12]State Court R., 01/16/07 Trial Tr., at 155.

was improper for the detective to refer to prior burglaries.[13] The trial court denied the request for a mistrial, stating that it did not perceive the investigator's statement as a reference to prior criminality.[14]

On direct appeal. Applicant argued that the trial court erred in denying his request for a mistrial.  In *Brooks I*, the Colorado Court of Appeals rules that the testimony was admissible under Colorado Rule of Evidence 404(b) as evidence of Applicant's intent to aid, abet, or encourage Acevedo in the commission of the crimes. [# 2-2, at 21-22].  The state appellate court further determined:

> . . . , even assuming the testimony was improper evidence of prior misconduct, the isolated reference to "a few licks" did not require a mistrial.  Once again, it was a brief, unelicited statement without elaboration or subsequent mention.  Thus, any prejudice to [Applicant] was not so substantial as to warrant a mistrial. [State case law citation omitted].

[*Id.* at 22].

I find and conclude that the state appellate court's decision was consistent with the due process principles set forth in *Payne*.  Even if the investigator's reference to "a few licks" lacked probative value, it was not prejudicial to Applicant because the remark suggested only that Applicant had committed prior burglaries.  As discussed above, defense counsel conceded at trial that Applicant was guilty of (second degree) burglary. Moreover, even if the comment suggested to the jurors that Applicant knew, based on prior burglaries, that Acevedo was armed at the time of the charged offenses, other

---

[13] *Id.* at 155-56.

[14] *Id.* at 156.

evidence also supported that inference, as discussed in Section III.B.2, *infra*. Claim 1 will be dismissed in its entirety.

## B.  Claim 2

For his second claim, Applicant asserts that his trial counsel, who labored under a conflict of interest, and direct appeal counsel, were constitutionally ineffective in failing to challenge the misleading jury instruction on complicity.

[# 17-1, at 23].

To prevail on an ineffective-assistance-of-counsel (IAC) claim, Applicant must show that: (1) counsel's legal representation fell below an objective standard of reasonableness; and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  Judicial scrutiny of counsel's performance is highly deferential.  *Id.*  at 689.  Counsel's decisions are presumed to represent "sound trial strategy;" "[f]or counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong."  *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999) (internal quotations omitted).  Under the AEDPA standard of review, "the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 131 S.Ct. at 788.

Prejudice exists when there is a reasonable probability that, but for counsel's defective representation, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 693.  The likelihood of a different result must be substantial, not just conceivable.  *Id.*  I need not address both prongs of the *Strickland* inquiry if Applicant's claim fails on one.  *Id.*  at 697.

14

The *Strickland* standard also applies to claims of ineffective assistance of appellate counsel.  *See Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003); *Hannon v. Maschner*, 845 F.2d 1553, 1558 (10th Cir. 1988).

**1.  IAC claim based on conflict-of-interest**

Applicant makes the following allegations in the Amended Application:

> In his pro se Rule 35(c) motion, Mr. Brooks argued that his trial defense counsel was ineffective for failing to disclose an actual conflict of interest, which Mr. Brooks did not knowingly and intelligently waive because he had not been properly advised of the conflict.  Mr. Acevedo had previously been charged with burglary, menacing and other charges in El Paso County case 2005CR1535, which was dismissed by the DA.  He was represented by William Schoewe of the Public Defender's Office – the same attorney appointed to represent Mr. Brooks. On February 24, 2006 a conflict hearing was held, and Mr. Schoewe did not notify the court of his previous representation of Mr. Acevedo.  This was an actual conflict of interest that prejudice[d] Mr. Brooks because Mr. Schoewe had divided loyalties, and had to respect the attorney-client confidences of his deceased former client.

[# 17-1, at 11-12].

Respondents did not perceive the conflict-of-interest allegations as a separate claim for relief that they were required to address in their Answer.  [*See generally* # 32].  Further, up receipt of Respondents' Answer, Applicant did not assert in the Reply that Respondents failed to acknowledge a conflict-of-interest claim, nor did Applicant continue to press the claim.  [*See generally* # 39].  Because Applicant is represented by counsel, his pleadings are not afforded a liberal construction.  Notwithstanding, because Applicant exhausted the conflict-of-interest claim in the state courts, I will review the merits under the AEDPA deferential standard of review.

 "[W]here counsel is burdened by an actual conflict [of interest], '[n]o further showing of prejudice is necessary.'" *United States v. Flood*, 713 F.3d 1281, 1286 (10th

Cir. 2013) (quoting *United States v. Bowie*, 892 F.2d 1494, 1500 (10th Cir.1990) (citing *Cuyler v. Sullivan*, 446 U.S. 335, 349-50 (1980)). "However, 'prejudice is presumed only if the defendant demonstrates that counsel actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance.'" *Flood*, 713 F.3d at 1285 (quoting *Strickland*, 466 U.S. at 692). "An actual conflict of interest exists only if counsel was forced to make choices advancing interests to the detriment of his client." *Workman v. Mullin*, 342 F.3d 1100, 1107 (10th Cir. 2003) (ellipsis and internal quotation marks omitted). In other words, there must be more than a potential conflict of interest or "a mere theoretical division of loyalties." *Mickens v. Taylor*, 535 U.S. 162, 171 (2002). Moreover, to prevail, the petitioner "has the burden of showing specific instances to support [his] claim of actual conflict of interest." *Flood*, 713 F.3d at 1287 (brackets and internal quotation marks omitted).

In *Brooks II*, the Colorado Court of Appeals rejected the Sixth Amendment conflict-of-interest claim on the following grounds:

> [Applicant's] contention that trial counsel provided ineffective assistance because he had a conflict of interest due to his previous representation of [Acevedo] fails as a matter of law.
>
> [Applicant] does not allege any facts sufficient to show that his attorney was disloyal or that the attorney's ability to represent him competently was limited by any responsibility to [Acevedo]. [State case law citations omitted]. Instead, Applicant argues that trial counsel "contravened the defense that [Applicant] had no knowledge [Acevedo] was armed" by calling an officer who had arrested [Acevedo] during an unrelated burglary charge to testify that [Acevedo] had been armed at the time of his arrest.[15]

---

[15] The state appellate court noted: "[Applicant] alleges the arresting officer called as a witness in this case was the arresting officer from the case in which the trial counsel had previously represented [Acevedo]. The record provides no support for this assertion." [#2-8, at 8 n.1].

Trial Counsel's theory of defense at trial was that [Acevedo] had been the one who carried a gun and shot at the officers during the burglary.  He argued that [Applicant] had not known that [Acevedo] had a gun or that he intended to use it. Trial counsel's decision to call the officer as a witness in [Applicant's] case was a tactical choice intended to corroborate that it was [Acevedo] who fired the gun. [Internal state case law citation omitted].

Further, [Acevedo] is deceased, and trial counsel's prior representation of [Acevedo] was on an unrelated matter.  Therefore, trial counsel did not simultaneously represent [Applicant] and [Acevedo], nor did he receive confidential, material information from [Acevedo] regarding this case.  Accordingly, we conclude that the trial court did not err by denying this claim.

[# 2-8, at 7-9].

The state court record supports the Colorado Court of Appeals' factual finding that Applicant's trial attorney represented Acevedo for an offense that occurred before the criminal conduct charged in the case at hand,[16] and Applicant does not point to any clear and convincing evidence to the contrary.  Moreover, a careful review of the state court record demonstrates that the attorney's representation of Applicant did not advance any interests that were detrimental to the Applicant.  Because Applicant's counsel did not labor under an actual conflict of interest, prejudice is not presumed.  Applicant has not established that counsel's former and unrelated representation of Acevedo affected the outcome of his trial.  I find and conclude that the state appellate court's resolution of Applicant's Sixth Amendment IAC conflict-of-interest claim was consistent with Supreme Court law.  Accordingly, Applicant is not entitled to federal habeas relief.

## 2.  IAC claims relating to complicity instruction

---

[16] *See* State Court R., 12/12/06 Hrg. Tr.; *see generally* Trial Trs.

Applicant next contends that his trial counsel was ineffective in failing to challenge the jury instruction on complicity.  He further maintains that appellate counsel should have raised the defective instruction as a point of error in *Brooks I*.

Under Colorado principles of complicity, a person is legally accountable for the actions of another if, "with the intent to promote or facilitate the commission of the offense, he or she aids, abets, advises, or encourages the other person in . . . committing the offense." COLO. REV. STAT. (C.R.S.) § 18-1-603 (2014).  There is a dual mental state requirement of the complicitor that must be proven before an accused may be legally accountable for the offense of another.  "First, the complicitor must have the culpable mental state required for the underlying crime committed by the principal. Second, the complicitor must intend that his own conduct promote or facilitate the commission of the crime committed by the principal." *Bogdanov v. People*, 941 P.2d 247, 251 (Colo.), amended, 955 P.2d 997 (Colo. 1997), *disapproved of on other grounds by Griego v. People*, 19 P.3d 1 (Colo. 2001).  Under a complicity theory, "it is not necessary that any single person commit all the elements of the underlying offense. It is only necessary that the acts of the complicitor and the other actor or actors, together, constitute all acts necessary to complete the underlying offense."  *People v. Elie*, 148 P.3d 359, 365 (Colo. App. 2006).

At Applicant's trial, Instruction number 17 stated:

A person is guilty of an offense committed by another person if he is a complicitor. To be guilty as a complicitor, the following must be established beyond a reasonable doubt:

1. A crime must have been committed

2. Another person must have committed all or part of the crime

3. The defendant must have had knowledge that the other person
intended to commit all or part of the crime

4. The defendant did intentionally aid, abet, advise, or encourage the
other person in the commission or planning of the crime.[17]

Instruction 17 was identical to the standard pattern instruction for complicity in Colorado.

*See* CJI-Crim 6:04.

### a.  representation by trial counsel

Applicant contends that the pattern instruction runs afoul of *Bogdanov* and that

trial counsel should have requested a jury instruction with "the correct intent mental

state element." [# 17-1, at 13].  Applicant further asserts that his trial attorney should

have objected to the "all or part of language," because inclusion of that language in the

complicity instruction is improper under circumstances where the alleged complicitor did

not commit any elements of the violent crimes.  [*Id.* at 14-15].  Applicant also argues

that the standard complicity instruction did not clearly inform the jurors that they had to

find Applicant complicit in each charged offense.  [*Id.* at 12-13].   According to Applicant,

there was no evidence "that [he] possess[ed] the intent to use the weapon or commit a

violent crime," as is evident from the jury's findings on the verdict forms  "acquit[ting] Mr.

Brooks of possessing a weapon" during the offenses.  [*Id.*].  Applicant argues that the

jurors were confused and convicted him based solely on evidence that he knew Mr.

Acevedo was armed.  [*Id.*; *see also* # 11, at 10].

At trial, Applicant's attorney objected to the complicity instruction and requested

that the second element be modified to change the word "crime" to "crimes" so "the jury

---

[17]State Court R., Court File, Instruction No. 17, at 196.

would be clear that this instruction applies to the individual charges."[18] The trial court

denied Applicant's requested modification, concluding that "the standard language is

clear and accurate and allows the jury to make findings consistent with the elements of

the crime charged."[19]  Later, in response to jury questions regarding the complicity

instruction, the trial court further instructed the jury that "Complicity, as defined in

Instruction 17, is a legal doctrine that could apply to all charges if the burden of proof is

met pursuant to these instructions.  You are reminded that the instructions must be

considered as a whole."[20]

In *Brooks II*, the Colorado Court of Appeals resolved Applicant's IAC claim as

follows:

> [Applicant] argues that under [*Bogdanov*], including the "all or part"
> of language in the complicity instruction was error because he "did not
> know [Acevedo] was armed and harbored no intent to commit any violent
> crimes." [Applicant's] reliance on *Bogdanov* is misplaced.

> In *Bogdanov*, the supreme court concluded that when a defendant
> charged with a crime under a complicity theory did not commit any of the
> essential elements of the crime, it is error to include the "all or part of"
> language in the instruction. However, the court noted that the "all or part
> of" language would be proper in a case where two or more persons
> together commit a crime, but neither one committed all the elements of the
> crime. *Id.* at 256.

> Here, the prosecution alternatively charged [Applicant] with
> committing all the elements of each offense or committing part of the
> elements of each offense based on a theory that [Applicant] and
> [Acevedo] together committed the underlying crimes. "This is exactly the
> situation in which the *Bogdanov* court specifically found it appropriate to
> include the 'all or part of' language." *People v. Bernabei*, 979 P.2d 26, 33

---

[18]State Court R., 1/19/07 Trial Tr., at 154.

[19]*Id.* at 155.

[20]*Id.* at 213-14 .

(Colo. App. 1998); *see People v. Elie*, 148 P.3d 359, 364-65 (Colo. App. 2006).

Because [Applicant] fails to show that counsel's performance was deficient in failing to object to the "all or part of" language of the complicity instruction, we perceive no error in the court's denial of this claim.

[# 2-8 at 9-11].

The state appellate court's determination that, under *Bogdanov*, the pattern complicity instruction was appropriate because "the prosecution alternatively charged [Applicant] with committing all the elements of each offense or committing part of the elements of each offense based on a theory that [Applicant] and [Acevedo] together committed the underlying crimes,"[21] [# 2-8, at 10], is binding on this federal habeas court.  *See Bradshaw v. Richey,* 546 U.S. 74, 76 (2005) ("a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").  Because the complicity instruction comported with state law, trial counsel's failure to challenge the instruction based on *Bogdanov* did not constitute deficient representation.  *See*, *e.g.*, *Battle v. Workman*, No. 09-5083, 353 F. App'x 105, 110 (10th Cir. Nov. 6, 2009) (unpublished) (rejecting petitioner's contention that trial counsel rendered deficient performance in failing to object to jury instruction where instruction was correct under state law at the time it was given).[22]

---

[21] State Court R., Court File, Complaint and Amendments, at 11-17, 28-29, 31-33.

[22] Applicant's additional contention that trial counsel was ineffective in failing to request a unanimity instruction is also foreclosed by Colorado law.  A unanimity instruction is not required when a defendant is charged with crimes occurring in a single transaction. *See Melina v. People*, 161 P.3d 635, 639-40 (Colo. 2007).

In addition, I find under the prejudice prong of the *Strickland* inquiry that Applicant has failed to demonstrate a reasonable probability that he would have been acquitted if trial counsel had requested further modification of the complicity instruction, or provided additional clarification of complicity liability for the jury during closing argument.

The Colorado Court of Appeals concluded in *Brooks I* that there was sufficient evidence at trial to substantiate each of Applicant's convictions under a complicity theory. [# 2-2, at 9-16].  The state appellate court's factual findings are presumed correct in this habeas proceeding, and are supported by the state court record.  The evidence of Applicant's guilt included (1) Applicant's statements to Detective Porter that: Applicant and Acevedo were partners and "had decided to do the burglary";[23] Acevedo was carrying a 9mm pistol during the burglary; and, Applicant thought initially that Acevedo was the one who shot him when he was attempting to escape; (2) uniformed sheriff's deputies announced their presence when entering the residence and yelled so loud that a neighbor could hear the officers' voices from two houses away; (3) after a shot was fired from inside the house at Deputies Gaenzle and Smith (who were on the other side of the door in the garage), Applicant fled from inside the residence and escaped by jumping over a fence, at which time he was shot in the buttocks by Gaenzle; (4) forensic evidence established that the gun found on Acevedo when he was shot by the police a few weeks after the offenses occurred was the same gun used to shoot at the sheriff's deputies during the burglary; (5) witnesses Pfirman and Main testified that Acevedo always carried a gun and Acevedo told Pfirman that he had shot

---

[23]State Court R., 1/12/07 Trial Tr., at 60, 79.

at Gaenzle; (6) shell casings, a bullet proof vest, a gun holster and knife were found in the motel room where both Applicant and Acevedo rendezvoused after the burglary.[24]

The evidence supported findings by the jury that Applicant participated in a burglary, knowing that Acevedo was armed; and, that Applicant and Acevedo deliberated and intended to use firearms to shoot and kill anyone, including a police officer, who might discover them burglarizing the house.  The jury could also infer from the evidence that Applicant aided, abetted, assisted or encouraged the pre-planned use of force against a police officer.  Further, Applicant admits that he burglarized the residence with Acevedo and there was evidence that Applicant was carrying a gun when he ran away from the house,  including his own statement to Detective Porter, that he later modified.[25]  As the Colorado Court of Appeals recognized in *Brooks I*, the jury's specific finding that Applicant did not use, or possess and threaten the use of, a deadly weapon[26] "does not eliminate the possibility that the jury may have concluded that [Applicant] possessed a deadly weapon but did not use it or threaten the use of it." [# 2-2, at 10-16].

In sum, there was adequate evidence at trial to support each of the jury's verdicts under the Colorado criminal statutes. *See* §§ 18-2-101(1) (criminal attempt), 18-3-102(1)(a) (first degree murder), 18-3-107(1) (first degree murder of a peace officer), 18-3-103 (second degree murder), 18-3-202(1)(e) (first degree assault), 18-3-206(1) (menacing), 18-4-202(1) (first degree burglary), C.R.S. (2008). [*See also* # 2-2, at 11-

---

[24]State Court R., Trial Trs., Testimony of Timothy McElroy, Steve Gaenzle, Paul Smith, Dan Dilts, Cliff Porter, Amanda Hall, Cordell Brown, and Rachel Pfirman.

[25]*See id.*, Gaenzle, Smith and Porter testimony.

[26]*See id.*, Court File, Jury Verdicts, at 215-219.

16].   Applicant fails to establish a reasonable likelihood that he would have been

acquitted if counsel had requested additional modification of the complicity instruction,

or further clarified the elements of complicity liability for the jury.  I find and conclude

that the state appellate court's decision rejecting Applicant's ineffective-assistance-of-

trial-counsel claim was not "so lacking in justification that there was an error well

understood and comprehended in existing law beyond any possibility for fairminded

disagreement." *See Richter.*

### b.  representation by appellate counsel

Applicant also claims that appellate counsel was ineffective for failing to

challenge the complicity instruction as a point of error on direct appeal.

"[A]ppellate counsel who files a merits brief need not (and should not) raise every

nonfrivolous claim, but rather may select from among them in order to maximize the

likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (citing

*Jones v. Barnes*, 463 U.S. 745 (1983)).

The Colorado Court of Appeals concluded the following as to Applicant's claim:

. . . [O]ne of appellate counsel's main arguments on appeal was that the
prosecution had not presented sufficient evidence to support [Applicant's]
convictions based on a complicity theory.  *See Brooks I.*  Therefore,
[Applicant's] argument that appellate counsel did not raise this claim fails.

Further, the *Brooks I* division noted that in support of his
insufficiency of the evidence argument, appellate counsel included a
section in the opening brief which "explained that contrary findings by the
jury were 'the result of both a misleading jury instruction on complicity,
which the court did not clarify even after the jury requested clarification,
and prosecutor's misstatement of the law of complicity in closing
arguments.'" The division concluded that [Applicant's] appeal asked for
review of the sufficiency of the evidence and not of the propriety of the
instructions, the response to the jury question, or the prosecutor's closing
argument.  *Id.*

> [Applicant] argues that each one of the issues raised in support of the insufficiency claim should have been raised independently. However, "counsel is not required to raise . . . every nonfrivolous issue a defendant desires to raise." *People v. Trujillo*, 169 P.3d 235, 238 (Colo. App. 2007). To demonstrate ineffective assistance in this context, the defendant must show that counsel ignored issues that were clearly stronger than those presented. *Id.*
>
> Here, [Applicant] fails to allege that the purportedly inadequately raised issues were stronger or had a better chance of prevailing than the issues raised in his direct appeal.  In the absence of such an allegation, the trial court was correct in denying [Applicant's] motion without a hearing. . .

[#2-8, at 17-18].

I find and conclude that the Colorado Court of Appeals' determination of Applicant's ineffective-assistance-of-appellate-counsel claim comported with *Smith* and *Strickland.*  A direct challenge to the complicity instruction on direct appeal was not an obvious winner.  In *Brooks II*, the state appellate court determined, in the context of addressing Applicant's IAC claim, that the complicity instruction was correct under Colorado law, as expressed in *Bogdanov*.

Moreover, Applicant would not have prevailed on a claim challenging the complicity instruction as a violation of his due process rights,[27] unless the error was prejudicial. *See United States v. Marcus*, 560 U.S. 258, 263-64 (2010) (recognizing that most errors in jury instructions are trial errors, not structural errors, requiring a showing of prejudice to warrant reversal); *Neder v. United States,* 527 U.S. 1, 11 (1999) (stating that harmless-error analysis applies to instructional errors so long as the error at issue

---

[27]Applicant asserted in the state post-conviction proceeding that the complicity instruction failed to apprise the jury of all essential elements of the crimes because "it required only that the jury find defendant was complicit to a crime and the burglary satisfied those elements. Because the complicity instruction stood alone, it underlines the jury's verdict because it permitted the jury to arrive at guilty verdicts without determining each essential element of the violent charges beyond a reasonable doubt." [# 2-7, at 34].

does not categorically "'vitiat[e] all the jury's findings.'") (quoting *Sullivan v. Louisiana*, 508 U.S. 275, 281 (1993)); *see also Bogdanov*, 941 P.2d at 254-55 (holding that standard complicity instruction "does not allow a defendant to be convicted of a crime under a complicity theory for which he did not have the requisite mental state" and, therefore, the instruction "does not create a structural defect.").  Under Colorado law, a trial error is deemed harmless where "'viewing the evidence as a whole, the error did not substantially influence the verdict or impair the fairness of the trial.'" *Liggett v. People*, 135 P.3d 725, 733 (Colo. 2006) (quoting *Medina v. People*, 114 P.3d 845, 857 (Colo. 2005)); *see also* Colo. Crim. P. Rule 52(a) (directing courts to "disregard" any error or defect that "does not affect substantial rights.").  If the jury instructions taken as a whole kept the prosecution to its proper burden of proof concerning all the elements of the offense, there is no reversible error.  *People v. Vanrees*, 125 P.3d 403, 410 (Colo. 2005) (citing *People v. Harlan*, 8 P.3d 448, 472 (Colo. 2000)).

Here, the jury instructions, read together, informed the jury of each element of the charged offenses, as well as the elements necessary to convict Applicant on a complicity theory.[28]  Moreover, as discussed in the previous section, the evidence at trial supported each of Applicant's convictions.  Applicant has thus failed to demonstrate that a constitutional challenge to the jury instructions on direct appeal would have succeeded. *See Jackson v. Shanks*, 143 F.3d 1313, 1321 (10th Cir. 1998) ("Absent counsel's omission of an obvious winner on appeal, we are not inclined to second-guess appellate counsel's decision to eliminate arguable but weak claims," citing *United States v. Cook*, 45 F.3d 388, 394-95 (10th Cir. 1995)); *see also Smith*, 528 U.S. at 288 (citing

---

[28] State Court R., Court File, Jury Instructions Nos. 1-29, at 179-212 .

*Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome")).   As such, he cannot demonstrate that the state appellate court's resolution of his IAC claim was an unreasonable application of federal law.

## C.  Constitutional challenge to complicity instruction

Finally, the Brief in Support of the Amended Application suggests that Applicant is asserting a claim challenging the complicity instruction as a violation of his federal due process rights. [# 11, at 12-15].   However, Applicant does not assert an independent claim challenging the complicity instruction in the Amended Application. Respondents argue that to the extent Applicant challenges the jury instruction as a trial error, he procedurally defaulted the claim in the state courts.   The Colorado Court of Appeals declined to consider the claim on post-conviction review on the ground that it should have been raised on direct appeal. [*Brooks II*, # 2-8, at 4-5].   *See* Colo. Crim. P. Rule 35(c)(3)(VII) ("The court shall deny any claim that could have been presented in an appeal previously brought," absent circumstances not applicable here).

A claim that has been procedurally defaulted in the state courts on an independent and adequate state procedural ground is precluded from federal habeas review, unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the federal violation, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice.   *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).   Colo. R. Crim. P. 35(c)(3)(VII) is an adequate state procedural ground for rejecting a claim. *See Burton v. Zavaras*, No. 09-1094, 340 F. App'x 454-55 (10th Cir. Aug. 4, 2009) (unpublished) (applying Colorado's bar against successive claims);

*Williams v. Broaddus*, No. 08-1254, 331 F. App'x 560, 563 (10th Cir. May 20, 2009) (unpublished).

Respondents contend that Applicant's ineffective-assistance-of-appellate-counsel claim cannot constitute "cause" to excuse his procedural default because the IAC claims lacks merit.  [# 32, at 33].  *See Murray v. Carrier,* 477 U.S. 478, 488 (1985) (recognizing that ineffective assistance of appellate counsel may constitute the "cause" necessary to excuse a procedural default . . . but "[s]o long as a defendant is represented by counsel whose performance is not constitutionally ineffective . . . we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default.").

I agree with Respondents that Applicant's challenge to the constitutionality of the jury instruction is procedurally barred.  Applicant does not offer any argument in the Reply to satisfy the cause and prejudice standard, nor does he make a colorable showing of factual innocence. *Coleman*, 501 U.S. at 750; *see also Murray*, 477 U.S. at 496 (recognizing that fundamental miscarriage of justice exists where a constitutional violation "has probably resulted in the conviction of one who is actually innocent"). Accordingly, I will not review the merits of Applicant's claim that the complicity instruction violated his federal due process rights.

### IV.  COA AND IFP

Under 28 U.S.C. § 2253(c)(2), I may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right."  Such a showing is made only when a prisoner demonstrates that jurists of reason would find it debatable that a constitutional violation occurred, and that the district court erred in its

resolution.  Applicant has not made a substantial showing of the denial of a constitutional right.  Therefore, a certificate of appealability is denied.

Under 28 U.S.C. § 1915(a)(3), I certify that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status will be denied for the purpose of appeal.  ***See Coppedge v. United States***, 369 U.S. 438 (1962).  If Applicant files a notice of appeal, he also must pay the full appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

## V.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1.  That the Amended Application for a Writ of Habeas Corpus 2254 [# 17-1], filed March 10, 2014, by Applicant Keith Brooks, is **DENIED**;

2. That this case is **DISMISSED WITH PREJUDICE**;

3.  That a certificate of appealability **SHALL NOT ISSUE** under 28 U.S.C. § 2253(c); and

4.  That leave to proceed *in forma pauperis* on appeal is **DENIED** without prejudice to the filing of a motion seeking leave to proceed *in forma pauperis* on appeal in the United States Court of Appeals for the Tenth Circuit.

Dated January 13, 2015, at Denver, Colorado.

**BY THE COURT:**

Rob Blackburn

Robert E. Blackburn
United States District Judge